## Anton v. Secrist, Appellant.

*Will—Construction—Trusts and trustees—Separate use trust—Residuary devise—Equity—Jurisdiction.*

Where a testatrix makes specific devises of real estate to her two daughters in fee, and in a subsequent clause of her will gives, devises and bequeaths unto the two daughters all the rest and residue of her estate "so nevertheless that the same, as well as the other bequests above given, shall be for the sole and separate use of the said daughters," the lands specifically given in the first part of the will are covered by the words "other bequests above given," and are to be held under a separate use trust for the daughters. Such land cannot be mortgaged by the daughters, and if one of them attempts to do so and judgment is entered upon the bond accompanying the mortgage, a sale under such judgment will be enjoined by a court of equity at the instance of one who has lawfully purchased the land from the trustee.

Argued April 28, 1913. Appeal, No. 122, April T., 1913, by defendant, from decree of C. P. Allegheny Co., First Term, 1912, No. 170, on bill in equity in case of George Anton v. William B. Secrist. Before RICE, P. J.,

HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Bill in equity for an injunction.

On a motion for a preliminary injunction SWEARINGEN, P. J., filed the following opinion:

This bill was filed by George Anton, who is the owner of certain land situated in the ninth ward, Pittsburg, Allegheny county, Pennsylvania, against William B. Secrist, in which the complainant prayed, inter alia, for an injunction to restrain the defendant from exposing it to sale. The sale was advertised for Monday, September 6, 1911. The bill was presented on September 4, 1911, and the complainant moved the court to grant a preliminary injunction and fix a time for hearing upon motion to continue the same. Counsel for the defendant agreed to adjourn the sale until October 10, 1911, and October 8, 1911, was fixed as the time hearing upon said motion. Accordingly no preliminary injunction was issued. At the time fixed, the parties appeared and the defendant filed an answer. The case was not, however, heard upon bill and answer, but it was heard upon motion for preliminary injunction and testimony was taken.

The land in question formerly belonged to Elsie Stumbillig, who died in 1904. She left a will, dated October 31, 1900, which was duly probated August 1, 1904, and the same is now on file in the register's office of said county of Allegheny, and is of record in Will Book, vol. 80, page 30. In the first and second items of said will, the testatrix made certain pecuniary bequests for masses. In the third item, she devised and bequeathed the above-described land to her daughter "Annie Winter, wife of Adam Winter," in fee. In the fourth item, she devised and bequeathed certain other land to her daughter, "Agnes Conrad, wife of George H. Conrad," in fee.

The fifth clause of said will is as follows:

"All the rest and residue of my estate, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at my decease, I give, devise and bequeath unto my two daughters, Annie Winter and Agnes Conrad, share and share alike to them and their heirs and assigns forever, so nevertheless that the same, as well as the other bequests above given them shall be for the sole and separate use of the said daughters, Annie and Agnes, notwithstanding any coverture, and not to be in any way, at any time or manner whatever, liable to the contracts, debts or engagements of their present husbands, or any husband either may hereafter have or take and not to be in any way or manner whatever subject to the control or interference of such husband or husbands."

On July 3, 1906, the said Annie Winter and Adam N. Winter, her husband, executed and delivered to the city deposit bank their bond with warrant of attorney to confess judgment, accompanied by their mortgage of said land, to secure the payment of $1,000 at the end of three years from said date, which mortgage was recorded in the recorder's office of said county of Allegheny in Mortgage Book, vol. 1260, page 515. By various assignments, said mortgage and bond became vested in the defendant, William B. Secrist, on October 10, 1911.

On January 30, 1909, the orphans' court of the said county of Allegheny, upon the petition of said Annie Winter, entered a decree appointing William M. Hess trustee to take charge of, receive the income and preserve the property devised in said will of Elsie Stumbillig; and the trustee filed his bond as required by said order of court. Upon his petition, the orphans' court entered a decree September 30, 1909, directing him to convey said real estate to George Anton, the complainant. for the sum of $7,000; and pursuant thereto, the trustee, by deed dated December 8, 1909, of record in

the recorder's office of said county of Allegheny, in Deed Book, vol. 1639, page 600, conveyed said land to George Anton and received the purchase money, all of which, with the exception of about $300 or $400, he still has. It does not appear that the holder of said bond and mortgage was given any notice of said proceedings in the orphans' court. Of course the defendant herein was not served with notice of the proceedings, because he did not become the holder of said bond and mortgage until long afterwards. It was not shown that the defendant herein made any attempt to protect himself by obtaining a certificate of no defense to the bond and mortgage.

October 17, 1911, the defendant herein entered judgment upon the bond, accompanying said mortgage, against Annie Winter and Adam N. Winter, her husband, for the sum of $1,126, issued execution thereon and caused a levy to be made upon the said land of the complainant, and the same has been advertised for sale by the sheriff as aforesaid.

The position of the complainant is that said mortgage and judgment are void as a lien upon his land, that the defendant herein is seeking to throw a cloud upon his title by process of law, against right and justice, and to injure him by harassing him with such proceedings.

The position of the defendant herein is that said lien is not void and that complainant has shown no equity to entitle him to the relief for which he has prayed.

In Pennsylvania, where we have no separate court of chancery, the general rule is that a judgment creditor may sell any real estate, the title to which is alleged to be in the defendant in his judgment, and then the title will be tried in an action of ejectment by the purchaser. Ordinarily, there is no jurisdiction in our courts of equity to interfere. But to this rule there are exceptions. If there were not, any owner of real estate might be harassed by suits involving his title, and the declara-

tion that the law protects a man in the enjoyment of his property, would be vain and meaningless. But the exceptions to the rule are few and the facts must be undoubted; otherwise, the extraordinary powers of a court of equity cannot be invoked. If, however, the execution creditor is acting fraudulently, or if it is so clear that the defendant in the judgment has no title to the land levied, so that no question thereon could be submitted to a jury, then equity will interfere to protect an owner from harassing and vexatious litigation. The exceptions to the general rule are well stated by our Supreme Court as follows:

"The result of the authorities is that the practice in regard to interference with a creditor levying on an alleged interest of his debtor, is assimulated to the general chancery practice upon bills to remove cloud upon title, and the jurisdiction of equity is only exercised where the facts are clear, and the hardship or inadequacy of the common-law procedure is manifest, but where these elements appear, the court will not be deterred from intervention by the fact that the practice at common law has been so long established and that all presumptions are in its favor:" Kreamer v. Fleming, 200 Pa. 414.

The complainant's contention is that the mortgage upon said land, given by Annie Winter, is not and never was a lien. If this be true, the defendant herein obtained no lien upon the land by the entry of his judgment. The reason is that the judgment was not entered until long after any title in Annie Winter had passed to the complainant. It could, therefore, only be claimed that the judgment is a lien, because the bond accompanied the mortgage, and thus the lien of the judgment related back to the date of the mortgage. But, if the mortgage was void, of course the lien of the judgment upon the bond, by relation, is equally invalid. The question then is: What estate in the above-described land did Annie Winter take by the will of her mother?

Was the devise to her in fee, or was it a devise to her sole and separate use? If it was a fee simple, then the mortgage given by her is valid; if it was an estate to her sole and separate use, the mortgage is void for want of power in her and her husband to execute it.

It is clear that by the third item of said will, if it stood alone, Annie Winter took an estate in fee in the land therein devised to her. It is settled that such an estate cannot be cut down by subsequent provisions of the will unless they be clear. Does the fifth item of said will, above quoted at length, have such effect upon the devise to Annie Winter in the third item?

That the testatrix intended to grant an estate for the separate use of Annie Winter in a portion of the gift to her is, in our opinion, beyond question. She used the technical words "for the sole and separate use," which of themselves indicate the intention, and she expressly excludes the husband from all control over the property. Undoubtedly this created an estate to the use of the beneficiary. But the defendant's counsel argue that, while this may be true as to the residuary estate, it is not true as to the land devised to Annie Winter by the third item of said will. We cannot agree with this contention. We think the manifest purpose of the testatrix was to create an estate to the separate use of her daughters in all the property which she left them. But she intended that each, as against the other, should have a specific piece of land. In the third and fourth items of the will she gave to each of her daughters specific land in fee. In the fifth item, she gave them the rest of her land and the personalty in fee, by equally express technical language. Then she provided that "the same," the residue, "as well as the other bequests above given them" should be for their sole and separate use. We cannot perceive that the testatrix made any distinction between the residuary and the specific devises. Both were brought by apt words under the direction that they shall be held for the separate

use of the devisees. No previous bequests or devises were made in said will to said daughters, other than those contained in the third and fourth items. If the words "as well as the other bequests above given them," do not refer to the third and fourth items of the will, they do not refer to anything, they are meaningless and they may be cut out of this will. But we cannot so deal with the language used by the testatrix. It is our duty to give effect to every word of her will, if possible; and, if the will be construed as above indicated, effect is given to every word, and the will is consistent, manifesting a plain intent on the part of the testatrix to give her daughters, not estates in fee, but to their sole and separate use. They were both married, and the husband of Annie Winter is still living. We therefore conclude that the estate which Annie Winter took in the land in question, under the will of her mother, was an estate to her sole and separate use. It is immaterial that no trustee was named, because equity will not permit a trust to fail for want of a trustee. The important matter is that a trust was created.

It is only necessary to refer to the authority of Lancaster v. Dolan, 1 Rawle, 231, for the proposition, that Annie Winter had no powers over the estate to her separate use, except those given her in the will of her mother. That is the settled law of Pennsylvania. In this will, Annie Winter was given no powers over her separate estate and therefore could exercise none, while covert. Consequently, her attempt to mortgage her land was void for want of power to do so, and the mortgagee obtained thereby no lien upon the land, and neither did the assignee thereof, the defendant herein.

This case is thus brought directly within the rule that equity will interfere, where the complainant's right is so clear that the intervention of a jury would be entirely unnecessary. If the purchaser at the proposed sheriff sale were before us in an action of ejectment against this complainant, we would be obliged to

344      ANTON *v.* SECRIST, Appellant.

Opinion of Court below—Opinion of the Court.    [54 Pa. Superior Ct.

rule the case upon a construction of the will of Elsie Stumbillig. There would be nothing whatever upon which a jury could pass. Therefore, under the authorities cited, it is our duty to now construe said will. Being of opinion that Annie Winter was without power to mortgage said land and that defendant herein acquired no lien therein, it is equally our duty to protect this complainant from the wrong with which he is threatened.

The equities are rather evenly balanced. If, as alleged, the proceeds of said mortgage went to improve the land, that might be a strong reason why the orphans' court should afford the holder relief, if possible, out of the moneys in the hands of the trustee. But it is no reason why this complainant should be made to suffer against right and justice. On the other hand, if the defendant herein took said bond and mortgage without examination of Annie Winter's title and without securing a certificate of no defense thereto, he cannot rightfully complain of anyone but himself. Between the parties, we think the law is with the complainant, and that the preliminary injunction should issue.

The court subsequently entered a final decree making the injunction perpetual.

*Error assigned* was the final decree of the court.

*J. McF. Carpenter*, of *Carpenter & Chalfant*, with him *W. B. Secrist*, for appellant.

*Robert Woods Sutton*, with him *John C. Slack, John W. Chalfant* and *Simon R. Huss*, for appellee.

PER CURIAM, July 16, 1913:

We cannot agree with appellant's counsel in their first contention, that the fifth clause of the will of Elsie Stumbillig did not modify or limit the estate in fee which the words of the third clause import, and that notwithstanding

the words of the fifth clause an absolute estate in fee free from any trust was vested in Annie Winter. Such words as were used in the fifth clause have always been held to create a sole and separate use trust, and there is nothing in the context, or in the extrinsic circumstances or conditions proved, which would warrant the conclusion that the testatrix' intention was different from what her plain words unmistakably import. Nor do we think there is any room for reasonable doubt that the words of the fifth clause, "as well as the other bequests above given them," refer to the specific gifts to Annie Winter and Agnes Conrad contained in the third and fourth clauses of the will. There is no other gift to them to which those words can apply, and, although in strict propriety of language the word "bequest" means a testamentary disposition of personalty, yet it has a broader meaning in popular usage, which would include such disposition of realty as well. Where the context clearly shows, as it does here, that the testator used it in that sense, the rule that in doubtful cases it is safest to adhere to the technical meaning of words, must give way to the rule that the plainly ascertained intention of the testator controls the meaning of technical words. Thus viewing the will, we entertain no doubt that the testatrix intended, not only to create a sole and separate use trust as to the residue, but also to subject thereto the gift to Annie Winter of the land in question, and that, notwithstanding the generality of the language of the third clause of the will and the omission to name a trustee, the fifth clause of the will was effectual for that purpose. See Gilbert's Est., 230 Pa. 502, and cases there cited. It logically follows, under well-settled principles applicable to such estates, that, in the absence of a provision in the will giving her such power, she had no power to mortgage the land, and, therefore, neither the mortgage nor the judgment entered on the confession in the accompanying bond acquired a lien thereon. See Holliday v. Hively, 198 Pa. 335, and cases there cited; Sheaffer's Est., 230 Pa. 426. There is nothing, therefore,

which a sheriff's sale on that judgment could vest in the purchaser, and an ejectment on a sheriff's deed pursuant to such sale would of necessity fail. So far as we can discover from the pleadings and evidence, there is no disputed fact which, in such action of ejectment, would have to be submitted to the jury, but the court would be bound to declare that the separate use trust was so clearly and unequivocally established by the will that the sheriff's sale passed no title. Notwithstanding the earnest and able argument of appellant's counsel, we are all of opinion that the court was right in holding that this is one of those exceptional cases where a court of equity has jurisdiction. See Kreamer v. Fleming, 200 Pa. 414; Barrell v. Adams, 26 Pa. Superior Ct. 635; Gay v. Chambers, 37 Pa. Superior Ct. 41. The foregoing conclusions are so well supported by the reasoning of the opinion of the learned judge of the common pleas who awarded the preliminary injunction, which was adopted and approved by the court on final hearing, as to render more extended discussion by us unnecessary.

The assignments of error are overruled and the decree is affirmed at the costs of the appellant.